IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TYLER J. KEUP, | )<br>) |
| Plaintiff, | ) 4:05CV3208<br>) |
| v. | )<br>) |
| F. X. HOPKINS, DENNIS BLAKEWELL, SALVADOR CRUZ, TY DEKOENIG, and, DIANE SABATKA-RINE, all being sued in their individual capacities, | ) MEMORANDUM AND ORDER<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Before the court is the defendants' motion for summary judgment (Filing No. 102). The plaintiff filed an amended complaint alleging violations of 42 U.S.C. § 1983 and seeking a preliminary injunction, a declaratory judgment and damages for constitutional violations. Filing No. 86. The court, having carefully considered the record, the briefs and exhibits submitted by the parties, and the relevant case law, now determines that the defendants' motion for summary judgment should be granted in part and denied in part.

**FACTS**

Tyler Keup ("Keup") is an inmate in the custody and control of the Nebraska Department of Correctional Services (hereinafter "NDCS") at the Lincoln Correctional Center (hereinafter "LCC"). Verified Amended Complaint, Filing 86, p. 1-2. On or before March 3, 2005, Keup created two separate drawings. Filing 86, Amended Complaint, ¶ 13. The first drawing was of a large cross with various images within the cross, including a marijuana leaf. Filing 86, Ex. ("Ex.") A. The second drawing contained the top half of a nude woman. Filing 86, Ex. A. After Keup made the drawings, he attempted to mail them

to his parents. Filing No. 86, ¶ 14. Keup was informed by unit staff that the drawings could not be mailed because they violated LCC's Operational Memorandum ("OM") 207.1.1 on Leisure Time Activities. Filing No. 86, ¶¶ 16, 18 and 20. The OM which was in effect at that time stated in relevant part:

> Positively, NO hobby work will contain any of the following (obscene, nude, lewd, lascivious, criminal threat group related or filthy) pictures printed, inscribed, painted, drawn, or tooled thereon: (1) Uncovered female breasts; . . . (9) Any items depicting illegal drugs.

OM 207.1.1, last revised October 29, 2004 ("pre-amendment OM 207.1.1"), Filing No. 101, Index in Support of Brief, Ex. No. 4, p. 11.[1]

On March 3, 2005, Keup filed an Informal Grievance Resolution Form with the unit staff alleging a violation of his "First Amendment right to create my own art." Filing No. 86, Ex. B. The informal grievance was denied on March 4, 2005. Filing No. 86, Ex. B. On April 10, 2005, Keup filed a Step-One Grievance regrading the drawings, which was denied on April 28, 2005. Filing No. 86, Ex. C. On May 2, 2005, Keup filed a Step-Two Grievance which was denied on May 18, 2005. Filing No. 86, Ex. D.[2]

---

[1] On September 29, 2005, OM 207.1.1 was amended. The revisions removed the broad restrictions on the content of hobby work and instead provides in relevant part:

> No hobby items may contain materials which advocate or are likely to incite violent or illegal activity, including materials which advocate or depict violent or illegal sexual activity or any materials which are deemed by the Facility Administrator to constitute a threat to the safety, security or good order of the facility.

OM 207.1.1, last revised September 29, 2005 ("post-amendment OM 207.1.1"); Filing No. 101, Ex. 3, p. 10-11. OM 207.1.1 was allegedly amended again after September 29, 2005, but neither party asserts that the subsequent amendments are relevant to this case.

[2] Keup filed an additional grievance alleging that several OMs were not promulgated in accordance with the Administrative Procedures Act. Filing No. 86, Ex. F. Keup's amended complaint does not contain any claim related to that grievance and, thus, it is not considered by the court.

Keup alleges another violation of his First Amendment rights based on the mailroom's failure to mail the same drawings to the Maoist International Movement on September 3, 2005. Filing No. 86, ¶ 24, Ex. G. Keup filed an informal grievance that was denied, but did not timely file his Step-One Grievance allegedly because he was in segregation and unable to do so. Filing No. 86, Ex. G, p. 5. Defendant, F.X. Hopkins, returned the Step-Two Grievance unanswered indicating that it was submitted too late and that Keup had access to the proper grievance forms even if he was in segregation. Filing No. 86, Ex. G, p. 6.

On December 28, 2006, Keup received a religious book and greeting card from Pastor Joe Sukraw. Filing No. 86, Ex. 9. Keup alleges that the book was delivered with a notice of return mail secured to the book with a staple, thereby damaging the book, and that the greeting card was confiscated and returned to sender. Filing No. 86, ¶ 30.

OM 205.1.1 provides in relevant part:

> All publications, which include but are not limited to newspapers, magazines, softback books or paperbacks, and hard bound books must be prepaid and sent to the inmate directly from the publisher. . . . (c) Personal mail, cards, bookmarks, etc. can not be included in mailings from the bookstore/publisher . . . .

Filing 101, Ex. 6, OM 105.1.1, p. 7. Keup filed his informal grievance on January 14, 2007, which was denied on February 2, 2007. His Step-One and Step-Two Grievances were also denied on February 29, 2007 and March 22, 2007, respectively. Filing No. 86, Ex. H.

On February 21, 2007, Keup was notified that he would not receive a sketchbook he ordered due to its content depicting bondage, which OM 205.1.1 prohibits. Filing 86, p. 43; Ex. 10. Under the relevant part of OM 205.1.1:

> The following publications are considered contraband: (a) Materials which advocate or are likely to incite violent or illegal activity, including materials which advocate or depict violent or illegal sexual activity such as: (1) rape or other violent sexual acts . . . .

OM 205.1.1, as of September 24, 2004, Filing No. 101, Ex. 7, p. 3. Keup completed all three steps of the grievance process, with the denial of his Step-Two Grievance on April 24, 2007.

On August 23, 2005, Keup filed a pro se complaint alleging a violation of First Amendment rights and a motion for a preliminary injunction based on a March 3, 2005, refusal by the defendants to mail drawings he had made to his mother stating that they violated "Hobby Rules." Filings Nos. 1 and 4. In response to his motion for the appointment of counsel, the court appointed counsel for Keup on January 19, 2007. On August 3, 2007, Keup amended his complaint adding the alleged violations regarding the mailing to the Maoist International Movement and refusals to deliver the greeting card and the sketchbook. The defendants have filed a motion for summary judgment alleging that the claims regarding the drawings are moot, that Keup failed to properly exhaust his administrative remedies for additional claims, and that they are entitled to sovereign and qualified immunity. Filing No. 102.

## SUMMARY JUDGMENT

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322,

1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if a defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once a defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings, but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the nonmoving party, "but in order to defeat a motion for summary judgment, the non-movant party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v.*

*West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

### *Administrative Exhaustion*

In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq. Woodford v. Ngo*, 126 S. Ct. 2378, 1288 (2006). The exhaustion provision of the PLRA states: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record. *Jones v. Bock*, 127 S. Ct. 910, 914-15 (2007), *citing Woodford*, 126 S. Ct. at 1288.

The failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Jones*, 127 S. Ct. at 921. However, in this case, Keup did plead exhaustion and supplied evidence to the court to show that he exhausted administrative process as to all claims.

The defendants make two claims regarding Keup's alleged failure to exhaust his administrative remedies: (1) that with the exception of the first claim, the remaining claims were either not properly exhausted or were not exhausted prior to August 23, 2005, the

original filing date of the lawsuit; and (2) Keup was untimely with his appeal of the mailing to the Maoist International Movement.

To properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," *Woodford*, 126 S. Ct. at 2386. The applicable procedural rules are defined not by the PLRA, but by the prison grievance process itself. *Jones*, 127 S. Ct. at 922-23. In this case, the Department of Correctional Services Rules and Regulations provide for a formal grievance process consisting of a three-step grievance procedure starting with an informal grievance to unit staff. Filing No. 101, Ex. 7, Title 68 N.A.C. Ch. 2, §004.01. The response to the informal grievance may be appealed in a Step-One Grievance to the designee of the Chief Executive Officer. *Id.,* Title 68 N.A.C. Ch. 2, §004.02). The response to the Step-One Grievance may be appealed in a Step-Two Grievance directed to the Director. *Id.,* Title 68 N.A.C. Ch. 2, §004.04. Time lines for the grievance procedures are set out in the Rules.

The documents provided by Keup, and not contested by the defendants, show that he exhausted his administrative remedies prior to filing the amended complaint. Dismissal without prejudice of those claims would merely result in Keup refiling them in a second lawsuit, and thus "certainly not comport with the purpose of the PLRA to reduce the quantity of inmate suits." *Jones,* 127 S. Ct. at 925.[3]

---

[3] Moreover, this court granted Keup leave to add the additional claims to this lawsuit in order to prevent multiple pleadings. For the same reasons that the court allowed Keup to amend his complaint to add additional claims, he was also granted leave to add additional parties. The claims against those defendants were exhausted prior to the filing of the amended complaint; therefore, the defendants have not shown that Keup did not exhaust his administrative remedies.

With regard to the mailing to the Maoist International Movement, the defendants have not met their burden of proving the affirmative defense. They have not shown that Keup could have completed the administrative grievance process while he was in segregation. Therefore, the court denies the defendants' motion for summary judgment based on the failure to exhaust administrative remedies.

### *Sovereign Immunity*

The Eleventh Amendment bars claims against state officials in their official capacities. *See Randolph v. Rogers*, 170 F.3d 850, 859 (8th Cir. 1999) (Eleventh Amendment bars federal court from ordering state officials to conform conduct to state law); *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 743-44 (8th Cir. 1998) (Eleventh Amendment immunity bars § 1983 lawsuit against state official in official capacity even if state entity is moving force behind deprivation of federal rights); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (without a clear statement that officials are being sued in personal capacities, complaint is interpreted as including only official-capacity claims).

The *Ex Parte Young* doctrine provides an exception to the above prohibition, however, where the relief sought is prospective and not compensatory. *Ex Parte Young*, 209 U.S. 123 (1908); *Heartland Academy Community Church v. Waddle*, 427 F.3d 525, 531 (8th Cir. 2005); *Treleven v. Univ. of Minnesota,* 73 F.3d 816, 819 (8th Cir. 1996)*; Murphy*, 127 F.3d at 754. A federal court may, therefore, issue an injunction to prevent state officials from violating the Constitution without running afoul of the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Accordingly, defendants' motion for summary judgment on Keup's claim for damages against the defendants in their official capacities will be granted; the motion for

summary judgment will be denied with respect to claims for declaratory and injunctive relief.

### *Qualified Immunity*

Pursuant to 42 U.S.C. § 1983, the law imposes civil liability on any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The court analyzes the officials' qualified immunity claims in two steps. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, viewing the facts in the light most favorable to Keup, the question is asked whether the officials' conduct violated a constitutional right. *See id.* If the answer is no, "there is no necessity for further inquiries concerning qualified immunity." *Id.* On the other hand, if the answer is yes, the court must determine "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir.2006) (citing *Saucier*, 533 U.S. at 201-02).

The defendants admit that the complaint alleges a violation of the First and Fourteenth Amendments and, thus, the violation of a constitutional right. The court, therefore, must analyze whether the violation was of a clearly established right. As the Supreme Court has explained, qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), *citing Saucier,* 533 U.S. at 206. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action

9

is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. Forsyth, 472 U.S. 511,] 535, n.12, 105 S. Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The U.S. Supreme Court has routinely held that prisoners do not lose their constitutional rights when they become incarcerated, and free citizens do not lose their ability to "exercis[e] their own constitutional rights by reaching out to those on the inside." Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). Nevertheless, prisoners' constitutional rights are necessarily limited. Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 125 (1977) ("The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.").

In Procunier v. Martinez, 416 U.S. 396 (1974), the Court struck down regulations concerning personal correspondence between inmates and non-inmates that censored letters that "unduly complain," "magnify grievances," or "expres[s] imflammatory political, racial, religious or other views or beliefs." Id. at 339. The Court reviewed the regulations under the following standard:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials . . . must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

*Id.* at 413-414. Subsequently, in *Turner v. Safley*, 482 U.S. 78 (1987), the Court reviewed prison regulations regarding inmate-to-inmate correspondence.[4] In *Turner*, the Court reviewed the holdings in its four prisoner rights cases that followed *Martinez*,[5] and specifically abandoned a standard of review established *Martinez* when reviewing restrictions on *incoming* mail. In *Turner*, the Court determined the relevant inquiry, for incoming mail, is whether the actions of prison officials were "reasonably related to legitimate penological interests."[6] *Turner*, 482 U.S. at 89. The Court ruled that "such a standard is necessary if 'prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Id., quoting Jones*, 433 U.S. at 128. The Supreme Court in *Martinez*, *Turner* and their prodigy, has clearly established Keup's right to send and receive mail; thus, the motion for summary judgment based on qualified immunity is denied.

---

[4] The regulations prohibited inmate-to-inmate correspondence unless the correspondence was between immediate family members who are inmates in other correctional institutions or if the correspondence concerned legal matters. Other correspondence between inmates, however, is permitted only if "the classification/treatment team of each inmate deems it in the best interest of the parties involved." *Turner*, 482 U.S. at 81-82.

[5] *Pell v. Procunier*, 417 U.S. 817 (1974); *Jones,* 433 U.S. 119; *Bell v. Wolfish*, 441 U.S. 520 (1979); *Block v. Rutherford*, 468 U.S. 576 (1984).

[6] *Turner* directs courts to assess the overall reasonableness of such regulations by weighing four factors. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," and this connection must not be "so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90 (*quoting Block*, 468 U.S. at 586). Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. *Id.* at 90. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. *Id.* And fourth, a court must consider whether there are alternatives to the regulation that "fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* at 90-91.

*Mootness*

The defendants argue that the September 29, 2005, amendment to OM 207.1.1 moots any review by the court of its constitutionality. At issue is whether the amendment moots either Keup's requests for an injunction or declaratory relief or his claim for monetary damages.

"The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again. . . . " *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Consequently, a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions. *See Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978). Because OM 207.1.1 was amended in September 28, 2005, Keup's claim for injunctive relief from pre-amendment OM 207.1.1 is moot. For the same reason, he does not have standing to seek declaratory relief from pre-amendment OM 207.1.1. *See Vorbeck v. Schnicker,* 660 F.2d 1260, 1265 (8th Cir. 1981). Nonetheless, he retains standing to bring his claims for monetary damages. *Wycoff*, 572 F.2d at 1261. *See also Watts v. Brewer*, 588 F.2d 646 (8th Cir. 1978). Therefore, the constitutionality of pre-amendment OM 207.1.1 is not moot.

Because the defendants have not provided any argument or evidence regarding the constitutionality of pre-amendment OM 207.1.1 or OM 205.1.1, these issues remain to be decided. The defendants have argued that post-amendment OM 207.1.1, when viewed in the light most favorable to Keup, is constitutional. However, the court finds that the defendants have not provided sufficient evidence at this time to prove that post-amendment OM 207.1.1 is valid under either *Martinez* or *Turner*. While the court can

easily conceive may reasons why post-amendment OM 207.1.1 could be reasonably related to legitimate penological interests, the defendants have not provided any evidence of what interest is involved.  To simply state, as the defendants do, that the language of post-amendment OM 207.1.1 "is in compliance with the criteria set out in [*Martinez*]," is not sufficient evidence.  Because the defendants have not produced at this juncture evidence sufficient to show this court that the regulations at issue are valid under the requisite standards from *Martinez* and *Turner*, the court denies their motion for summary judgment on the constitutionality of post-amendment OM 207.1.1 at this time.

### *Harm by Delay*

The defendants argue that any delay that was caused by their original denial to mail the drawings did not cause Keup harm.  However, Keup counters that he has suffered damages from both the failure to timely mail his drawings and from the failure to deliver the greeting card and sketchbook.  Therefore, the court finds that questions of fact remain regarding the extent of damages, if any, suffered by Keup.

THEREFORE, IT IS ORDERED that defendants' motion for summary judgment (Filing No. 102) is granted in part and denied in part as set forth above.

DATED this 14th day of February, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge